THE NEW ALBANY INSURANCE CO. *v.* WILCOXSON *et al.*

MORTGAGE.—If a mortgage is executed merely to protect property in the hands of the mortgagor from his creditors, other than the mortgagee, the mortgagor retaining possession, and the right of disposition, and these facts appear upon the face of the mortgage, it would be fraudulent and void, as against other creditors, and should be so declared by the Court; and the same result would follow, if the same intention and facts were established by parol evidence or otherwise.

APPEAL from the *Floyd* Common Pleas.

HANNA, J.—Suit to recover possession of personal property taken and held by *Wilcoxson,* sheriff, by virtue of several executions against one *Weir.* The appellant had a judgment against said *Weir,* who was a manufacturer of and dealer in cabinet ware, &c. To secure the appellant said *Weir,* on the 16th of *July,* 1860, executed a mortgage "of all the furniture, &c., together with the lumber, tools, &c., used in carrying on the cabinet business now in and about the ware rooms of said *Weir,* situated on lots 17 and 18, &c., and all like property that may be in said ware rooms when demanded by said company."

On the 20th day of *May,* 1861, another mortgage was executed to appellant by said *Weir* of like property in the "ware rooms, shop and lumber yard," on said lots.

The appellant, claiming under these mortgages, demanded and obtained possession, of *Weir,* of the property in controversy on the same day on which the levy was made. The contest is, therefore, really between creditors of said *Weir.* There was a general denial, and agreement that all matters might be given in evidence. Trial by the Court; judgment for the defendant.

The Court found specially upon certain points; but gener-

ally for defendant.. Upon these findings the question arises which is presented for our consideration.

The Court found that the mortgages were executed to secure a *bona fide* debt, and properly recorded, and the second one covered property to the value of 1,200 dollars; that *Weir* remained in possession of the property included in each mortgage until *November*, 1861, selling manufactured articles as demand was made for them, to the amount of 175 dollars per month, after the execution of the first mortgage, and 150 dollars after the second, applying some of the proceeds to pay his debts, (but none to the liquidation of the debt secured by these mortgages,) some to pay mechanics in the manufacture, but the application of the balance does not appear affirmatively; that he kept up the store by replenishing the stock by manufacture and purchase of raw material, and in that way the stock was constantly changing; but, after the second mortgage, the purchase was confined to articles of hardware and veneering. The appellant had the opportunity to know the facts found, and appears to have limited their examination to the inquiry, whether he kept up his stock. There was proof that most, if not all, the lumber since the second mortgage, was the same, and a part (not specified) of the furniture. There was no evidence that a fraudulent purpose was contemplated in giving or receiving the mortgage, or that the same was made in bad faith, and no such finding is given, but the necessary consequence of the agreement limiting the demand in the latter clause of the mortgage, as sustained and defined by the proof, was to hinder, delay and defraud creditors, and the same is therefor considered void.

. The first mortgage contained, in the latter part, the following clause: "Said *Weir* is to retain possession of the articles above described until the same are demanded by said insurance company, when he is quietly to yield the same, and if said property is levied upon by virtue of any execution, or said

The New Albany Insurance Co. *v*. Wilcoxson et al.

*Weir* executes any other mortgage on said property, that said company may demand and take into her possession said property."

Under the construction given to this clause, by the Court below, the said mortgagor could not take possession of said property unless an execution was levied or another mortgage executed, and as this might not happen, the right of possession, it is said, would remain in the mortgagor, and, therefore, said mortgage was not valid.

As to the second mortgage, it contained this clause: "Said *Weir* is to remain in the possession of the property herein described, until the possession thereof is demanded by said company, and the said *Weir* hereby agrees to deliver up to said company the possession of said property whenever the same is demanded by her. This mortgage is not to abrogate or annul any of the provisions of a mortgage heretofore executed by said *Weir* to said company, but is given as an additional security for said debt." During the progress of the trial, the appellant abandoned any claim under the first mortgage; it is therefore evident, that the Court below considered that the "provisions" of the first mortgage were carried forward into the second by the part thereof above quoted, and, under the proof, rendered it void, as, in law, calculated to "hinder, delay, and defraud creditors."

The latter part of the finding is somewhat obscure, but, we suppose, was intended to express the belief of the Court, that although, in point of fact, in the giving of the mortgage, the parties acted in good faith, and did not intend a fraud, the legal consequence of the provisions quoted, and the evidence of the acts of the parties, under said mortgages, had the effect to hinder, delay, and defraud creditors, and therefore render said instruments void. Was that conclusion correct?

We can not say, that, upon the face of the second mortgage, the Court could have declared, as a legal conclusion

from an inspection thereof, that it was intended, or had the legal effect, to hinder or delay creditors. If the two mortgages should be construed together, it is not then so clear what interpretation should be placed upon the language employed. As no time was fixed by the mortgages, or either of them, when the debt, which they were made to secure, should be paid, the inference is pretty strong, that, by the first mortgage, the mortgagor had the right to retain possession, except in the two contingencies mentioned. Part of the language so employed is, it seems to us, without meaning, as used, if this is not the true construction. Even if the two instruments should be considered together, it is very doubtful whether the provisions in the first, upon which the appellee relies, are carried forward into the second by its terms. But these are points which, it appears to us, it is not necessary, in the case at bar, to definitely pass upon, in view of the finding of the Court. The substance of the latter part of the finding of the Court is, that although, in point of fact, no fraud was intended by the parties to said mortgages, yet the legal consequence of some of the provisions thereof, as sustained and defined by the proof, was to defraud creditors, &c. To what part of the proof the judge who tried the case had reference, we can not certainly say; but we suppose it refers to the acts of the parties, in regard to the management and disposition of the mortgaged property, during the time it was suffered to remain in the hands of the mortgagor.

It is manifest, that if a mortgage is executed merely as a cloak to protect property in the hands of a mortgagor from creditors, other than the mortgagee, the mortgagor still retaining possession, and the right of disposition, and these facts appearing upon the face of the instrument, they would, as a legal proposition, vitiate it; and a Court should so declare. If these facts exist, but are not thus apparent, the effect, which ought to be given to them, would be the same, when

they are brought to light. This, we think, can be done by parol evidence. Proof of acts of the parties to the mortgage, in reference to said property, might be shown for that purpose—such as the disposition thereof by the mortgagor, and application of the proceeds to purposes other than the payment of the secured debt, with the knowledge of the mortgagee. *Freeman* v. *Rawson*, 5 Ohio St. R. 1, and authorities there cited.

If the mortgage should be made in good faith, and to cover a *bona fide* debt, still, if that, and the acts of the parties under it, are of the character above indicated, we can not see that their original good faith would divest the proceeding of its present legal effect, to hinder and delay creditors.

To what extent these principles may reach, we do not pretend to say, and only decide, that, in the case at bar, we can not, upon the record before us, disturb the judgment therein.

*Per Curiam.*—The judgment is affirmed, with costs.

*William T. Otto, George V. Howk,* and *R. M. Weir,* for the appellant.

*R. Crawford, H. Crawford, Thos. L. Smith,* and *M. C. Kerr,* for the appellees.